UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV570-J

JAMES CLAYTON WOODARD                                                               PETITIONER

VS.

LARRY CHANDLER, WARDEN                                             RESPONDENT

## MEMORANDUM OPINION

The Petitioner, James Clayton Woodard, currently incarcerated at the Kentucky State Reformatory, seeks a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 on grounds that his incarceration violates his rights under the United States Constitution. For the reasons discussed below, the Court is of the opinion that the petition should be denied.

The charges in this case arose from an event in which shots were fired at a bar. Mr. Woodard admitted being present at the bar, but denied firing the shots. The trial evidence indicated that Petitioner had an argument with two other patrons; half an hour later, a gunmen shot the other two patrons, and that gunman was identified by one of the victims as Petitioner. In February of 2002, a Jefferson Circuit Court jury convicted Mr. Woodard of two counts of assault in the second degree.[1] Following a sentencing hearing, the trial court entered a judgment dated March 8, 2002, sentencing Mr. Woodard to a maximum term of twenty years imprisonment. Petitioner was unsuccessful on direct appeal and on state collateral attack. He filed the current petition in this court in October of

---

[1] The jury also convicted Mr. Woodard of being a persistent felony offender, but the trial court did not use this status to enhance the sentence currently under review.

2007.

## STANDARD OF REVIEW

The federal habeas corpus statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, demonstrates a clear preference for decision by state courts, who are bound by federal law, and who are presumed correct on factual issues. The statute provides relief only if the state reviewing court used an unreasonable application of federal law, or unreasonably determined the facts. This standard, which requires deference to state court proceedings, is applicable when the state has adjudicated the federal claim on the merits:

> An application ... shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. Sec. 2254(d).

## ISSUES ON THIS PETITION

A. Did admission of evidence of other "bad acts" and of petitioner's use of alternative names change deny Petitioner a fair trial?

Over objection, the jury was permitted to hear evidence regarding three different incidents involving Petitioner's interchanges with police officers regarding the two different names ("Bo Clark" and "James Woodard") used by Petitioner. One of these incidents involved an indictment issued as to Bo Clark on unrelated charges. Mr. Woodard contends that the admission of this evidence violated the rules set out in Michelson v. United States, 335 U.S. 469 (1948).

The Supreme Court of Kentucky addressed this argument, discussing the facts of each of

the incidents, and concluded that "a reasonable jury could believe from the evidence that Appellant misrepresented himself with a consciousness of his guilt to avoid prosecution." Appellate opinion at 5.  To succeed in this Court, Mr. Woodard must establish that the Kentucky court unreasonably applied Supreme Court precedent when it determined that the probative value of the evidence outweighed the prejudicial effect.  The only authority he offers is Michelson, supra, in which the Court exercised its supervisory authority to review a federal prosecution. Such authority is not binding in habeas corpus review.  Early v. Packer, 537 U.S. 3 (2002).

Furthermore, while holding that "character" could not be introduced for the sole purpose of showing likelihood that the defendant acted in conformity with that bad character, the Michelson court clearly did not intend to preclude admission of such evidence for the many *other* purposes for which it might be presented.  Such purposes are identified by the Supreme Court of Kentucky.  Thus, Mr. Woodard has identified no United States Supreme Court authority precluding the admission of evidence of other acts or of aliases, nor does any such authority otherwise appear.  See, e.g., Bey v. Begley, 500 F.3d 514, 520 (6th Cir. 2007), finding no precedent "indicating that a state court violates a criminal defendant's due process rights when it properly admits evidence of the defendant's other bad acts."

      B.  Did the trial court's failure to grant a mistrial deny Petitioner a fair trial?

Detective Jones testified that he talked with Michelle Riggs when he encountered her at the courthouse on the day of trial.  He sought to testify concerning her demeanor and his assumptions about her attitude.  The trial judge sustained the defendant's objection, but denied the motion for a mistrial.  Mr. Woodard argues that even though the objection was sustained, the effect of allowing the trial to go forward was "to unfairly prejudice the jury ... as to the

credibility of ... a defense witness." Petitioner's Memorandum at 11.

The Supreme Court of Kentucky fully addressed this argument, and noted that the Commonwealth adhered to the trial court's ruling, there was no further testimony concerning Detective Jones' interview with Ms. Riggs, and counsel did not request an admonition or other limiting instruction regarding Detective Jones' comments. The appellate court noted that Kentucky law treats mistrial as an "extreme" remedy which is granted only when it is the only way to avoid denying the defendant a fair and impartial trial, and concluded, "Any prejudicial effect Appellant may have suffered by the detective's comments on Riggs' demeanor was slight, and would not warrant the extreme remedy of a mistrial." Appellate opinion at 6.

Once again, the issue is not what the undersigned would have done as trial judge, or even whether the trial judge committed an error of law. The only inquiry here is whether the Supreme Court of Kentucky reached its result through an unreasonable application of U.S. Constitutional law, or an unreasonable interpretation of fact. In view of all of the circumstances, this Court concludes that the Supreme Court of Kentucky selected a reasonable interpretation of the facts and the applicable federal law.

C. Was Petitioner's right to an impartial jury and a fair trial denied when the trial court seated a deaf juror?

During *voir dire*, Petitioner's counsel moved to strike from the panel a deaf venireman who was dependent on an interpreter. The trial court denied the motion. The Supreme Court of Kentucky noted a Kentucky statute that precludes disqualification of a juror solely on grounds of disability and even "outlines the requirements for appointing an interpreter for a deaf juror." Opinion at 7. The Court then turned to the question of whether the trial court abused its

discretion in determining that the juror could properly perform her duties.  Noting that the trial court had positioned the interpreter close to the witness and further noting that Mr. Woodard had not identified any evidence of prejudice due to the participation of the deaf juror, the Kentucky Court found no error in the denial of the motion to strike.

Mr. Woodard is not able to point to any United States Supreme Court precedent prohibiting the seating of a deaf juror, nor can he otherwise identify any U.S. Supreme Court authority that was unreasonably interpreted by the Kentucky court.  Neither does he point to any evidence of prejudice; Instead, he invites this Court to speculate that no deaf juror would be able to perform her or his duties fairly.  Not only would that effectively invalidate a Kentucky statute, but it would require this Court to impermissibly create a new rule of constitutional law.

D.  <u>Did failure to direct a verdict deny Petitioner his right to due process of law?</u>

Mr. Woodard argues that the Commonwealth's case consisted of circumstantial and contradictory evidence that created reasonable doubt of his guilt.  Among the inconsistencies he believes existed were details concerning the timing of arguments and who engaged in those arguments, as well as description of the shooter.

In <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979), the Court held that "the relevant question is whether, *after viewing the evidence in the light most favorable to the prosecution*, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis added].  Only if the answer to this question is "no" can Petitioner succeed.  Eyewitness testimony – even if it was contradicted by other witnesses – placing the literal smoking gun in Mr. Woodard's hand is evidence which, viewed in the light most favorable to the prosecution, would permit a reasonable trier of fact to find guilt beyond a

5

reasonable doubt.

The Supreme Court of Kentucky noted that among the factors that must be reserved to the jury are credibility and the weight to be given to any particular piece of testimony. As Mr. Woodard has noted in this Petition, credibility of witnesses was an important component of this case. While he was certainly entitled to point to inconsistencies in an effort to cast doubt on the credibility of witnesses, and to argue that particular testimony should be given little weight because of intoxication or confusion, there is no authority to support his position that conflicts in the testimony of witnesses is sufficient in and of itself to support the conclusion that *no reasonable fact finder* could have found guilt beyond a reasonable doubt.

The remainder of Petitioner's arguments are based on claims that he was denied effective assistance of counsel. To establish ineffective assistance of counsel, a litigant must satisfy a two-pronged test. First, he must show that counsel's performance was so deficient that it was the equivalent of no counsel at all. Second, he must show prejudice, i.e., a reasonable probability that absent the deficient performance, he would not have been convicted. Strickland v. Washington, 104 S.Ct. 2052 (1984).

    E.  Was Petitioner denied effective assistance of counsel when his attorney failed to move to suppress identification, failed to interview and investigate witnesses, failed to object to surprise witnesses, failed to present the defense of witness misidentification and failed to object to the use juvenile records for PFO conviction?

Petitioner asserts that the Commonwealth utilized his juvenile criminal records for purpose of establishing Persistent Felony Offender status and for purpose of sentence

enhancement, and that counsel failed to object. However, when this claim was presented to the Kentucky Court of Appeals on Mr. Woodard's Rule 11.42 proceeding, the Court found that the juvenile adjudications were *not* used to establish PFO status. Although counsel did object to their use, the records were used in the penalty phase in accordance with statute. KRS 532.055(2)(a)(6).

The Kentucky findings of fact are binding on this court. Additionally, it must be noted that the PFO conviction was not used to enhance the sentence. For all of these reasons, Mr. Woodard has failed to show ineffective assistance in connection with the use of juvenile records.

Mr. Woodard argues that his attorney failed to properly investigate, interview and prepare. He states that when a key eyewitness (shooting victim Hardin) was first shown a photopak, he failed to pick out a photograph of his assailant. However, the Kentucky Court of Appeals observed that the record showed that Mr. Woodard's picture was not part of that first photopak, and when his photograph was included in a subsequent photopak identification, Mr. Hardin picked it out as his assailant. Court of Appeals opinion at 5.

He also argues that his attorney should have sought out and retained an expert to testify regarding the dangers of eyewitness testimony. His argument on his Rule 11.42 proceeding, however, was that his lawyer was ineffective in failing to "seek funding" to hire expert witnesses. Mr. Woodard was not represented by the Public Defender's Office but retained his own counsel; thus, any provision for state funding for expert witnesses was not available to him, and his representation cannot be said to have been inadequate because his attorney failed to seek something which he could not have obtained.

As to failing to interview or investigate witnesses, Mr. Woodard has failed to point to any

witness who should have been so identified. Without such specific information, he can show neither failure to behave as competent counsel nor prejudice.

The claim of "surprise witnesses" was mentioned in the Jefferson Circuit Court on Rule 11.42. However, it was not included in the appeal to the Kentucky Court of Appeals. This constitutes a procedural default that bars this Court from addressing the issue.

    F. Was petitioner denied effective assistance of counsel when he was not permitted to testify in his own defense?

Mr. Woodard asserts that his testimony was essential if the jury was to understand what happened on the night of the assault. He states that during the course of the trial, "Woodard repeatedly informed counsel that he wanted to testify in his own behalf." Petitioner's memorandum at 24. He claims that "counsel's decision not to present Woodard's testimony ... did not constitute reasonable trial strategy." Id at 25. Petitioner correctly notes that the United States Constitution protects a defendant's right to testify or not to testify.

In this case, there is nothing to suggest that Mr. Woodard was not *permitted* to testify; thus, the question is whether counsel was deficient in advising him that it would be better if he did not testify. The Court will note in passing that it is the unusual criminal case in which a defendant's decision *not* to testify is a bad decision. Where, as here, a defendant has prior felony convictions that can be used to impeach his testimony, the decision to testify is even more problematic. The Kentucky Court of Appeals rejected this claim, pointing out that the record does not reflect that Woodard ever indicated any dissatisfaction with counsel or counsel's choice of witnesses. "In fact, trial counsel informed the court that Woodard was advised of his right to testify and was going to follow counsel's advice not to testify at trial." Court of Appeals opinion

at 4. The Court further noted that the effect of Mr. Woodard's testimony would have been to deny that he returned to the bar. This was the testimony of two defense witnesses. Thus, Mr. Woodard's testimony would have added little and would have run the risk of very damaging cross-examination. This Court agrees with the Court of Appeals: Counsel's performance was not deficient when he advised against taking the stand.

      An order in conformity has this day entered.